

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EHS:NCG/GMR
F. #2020R00785

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 3, 2025

By ECF

The Honorable Eric N. Vitaliano
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Hashimi et al.
                Criminal Docket No. 22-553 (ENV)

Dear Judge Vitaliano:

      The government respectfully submits this letter to preclude evidence or argument that (1) the defendants Mohammad David Hashimi and Abdullah At Taqi were entrapped; and (2) that the defendants were victimized by or particularly susceptible to ISIS propaganda.

      First, the defendants have not and cannot present credible evidence of inducement by a government agent. Accordingly, the Court should (1) preclude the defendants from arguing or eliciting testimony that either was entrapped; and (2) permit the government to redact certain of defendant Hashimi's out-of-court statements about whether now-convicted ISIS supporter Benjamin Carpenter was entrapped from Government Exhibit 702 (enclosed as Ex. A (filed under seal)).

      Second, any evidence or argument that the defendants were victimized by or particularly susceptible to ISIS propaganda is irrelevant, not a defense to the charged crime, and invites jury nullification. Accordingly, such arguments should be precluded.

    I.    Factual Background

      The indictment alleges that between July 2020 and December 2022, the defendants collected and contributed thousands of dollars to an ISIS member, "Facilitator-1," via a combination of cryptocurrency and other wire transfers. At Taqi contributed $2,769.35 to Facilitator-1's Bitcoin address and approximately $550 to a PayPal account associated with Facilitator-1. Hashimi contributed $140 to Facilitator-1's PayPal account. In addition, Hashimi contributed $364 and At Taqi contributed $200 through the GoFundMe campaigns created by co-defendant Khalillullah Yousuf and each defendant contributed another $50 to a GoFundMe which listed Facilitator-1 as the ultimate beneficiary.

A.   *Defendant At Taqi's Communications with CHS-1*

On or about October 17, 2021, CHS-1 began messaging defendant At Taqi on an encrypted messaging communication service ("ECS"). Over time, At Taqi and CHS-1 began discussing using cryptocurrency, which At Taqi stated he used to send money "unnoticed" through a "brother" he spoke to using an ECS. On or about February 3, 2022, CHS-1 told At Taqi that through their conversations, At Taqi had inspired CHS-1 to start deducting his salary to help the "brothers." At Taqi said he would tell the "brother" he knew about CHS-1 and confirmed that the brother was "from Dawlah," referring to ISIS.

In or about May 2022, At Taqi and CHS-1 again discussed At Taqi putting CHS-1 in touch with the "brother." At Taqi told CHS-1 that he had gotten back in touch with the "brother" through whom he had been sending cryptocurrency and assured CHS-1 that the brother was from "Dawlah." The brother with whom At Taqi was communicating was an ISIS member, Facilitator-1. In introducing CHS-1 to Facilitator-1, At Taqi informed CHS-1 that he had confirmed CHS-1 was trustworthy to the "brother," Facilitator-1, and conversely, he vouched for the "brother" to CHS-1, indicating that he had vouched for each individual's support for ISIS.

Facilitator-1 confided to CHS-1 that he had known "Abu Ibrahim," meaning At Taqi, for two years, and that At Taqi regularly sent money to Facilitator-1. Facilitator-1 also confirmed Hashimi previously donated to Facilitator-1.

B.   *Defendant Hashimi's Group Chat Communications in Which CHS-2 Was A Member*

Defendant Hashimi was a member of a group chat ("Group Chat-1") on Telegram that facilitated communication between and among supporters of ISIS and other groups that adhered to similar violent jihadist ideologies. A confidential human source ("CHS-2") was in Group Chat-1. In early April 2021, one member ("Member-1") of Group Chat-1 asked other members to:

> post all serious donation links that helps our mujahideen, our brothers and sisters suffering, our brothers and sisters in need of food, water and even if its helping animals and environment that got devastated by the kuffar. Post them here or in secret chat. For safety reason, post just the links without telling for what the money is being used.

Based on the context of the message, Member-1's reference to "serious donation links" for "mujahideen," an Arabic term that translates to "holy warriors," refers to fighters fighting for foreign terrorist organizations. Moreover, Member-1's request that other members not disclose the purpose for which the money would be used appears to be designed to make it more difficult for law enforcement to prove that any individual member had knowingly provided money to support terrorism or a terrorist organization should law enforcement monitor the communications in Group Chat-1.

2

In response to this message, another member of Group Chat-1 ("Member-2") posted a message asking users to "not forget the sister from the camp."  Member-2 then posted a link to a PayPal.Me profile with the heading "Pay [Facilitator-1] using PayPal.Me" and wrote "This account is special in my family may God bless you and may God forgive you."  Also in response to Member-1's request for donation links, co-defendant Yousuf (using an account with the display name "Khorasan E") posted a message to the chat with a BTC address controlled by Facilitator-1 (the "Facilitator-1 BTC Address"), writing "If anyone wants to donate to actual mujahideen in the battlefield" "This brother is legit^^^."  Records of the cryptocurrency exchange hosting the Facilitator-1 BTC Address reflect that it is controlled through an account owned by Facilitator-1, the same individual who was referenced in the PayPal link posted by Member-2, just prior to Yousuf's posting the Facilitator-1 BTC Address to the members of Group Chat-1.

Hashimi (using display name "G Hash") responded in Group Chat-1 to Yousuf posting the Facilitator-1 BTC Address, writing "Just be careful" and "Abu Hamza thought he was speaking to someone who was legit."  "Abu Hamza," refers to Benjamin Carpenter, whom the FBI arrested on or about March 24, 2021, and was later convicted of attempting to provide material support to ISIS and sentenced to 20 years' imprisonment for his role in translating ISIS propaganda.  *See United States v. Carpenter*, No. 21-CR-38 (KAC) (E.D. Tenn.); *see generally id.* ECF No. 224 (summarizing Carpenter's role as a translator for ISIS's Al Hayat Media Center). CHS-2 preserved these messages, but CHS-2 did not post in response to the above-described messages.

Approximately 24 hours earlier, in the Group Chat-1 thread, defendant Hashimi discussed whether now-convicted ISIS supporter Carpenter was entrapped:



II.   Legal Standard as to Entrapment

"[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citations omitted). Inducement happens when the government has "initiated the crime." *United States v. Cabrera*, 13 F.4th 140, 146 (2d Cir. 2021) (internal quotation marks and citation omitted). "[W]hen a defendant has presented credible evidence of inducement by a government agent, the government has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime." *United States v. Flores*, 945 F.3d 687, 717 (2d Cir. 2019) (citation omitted). The defendant only has the "slight burden of adducing 'some credible' evidence that the government initiated the crime. *Cabrera*, 13 F.4th at 144. "Inducement covers soliciting, proposing, initiating, broaching or suggesting the commission of the offence charged." *Id.* at 146 (internal quotation marks and citation omitted). The defendant need not establish inducement by a preponderance of the evidence. *Id.* at 147. "Some evidence . . . communicates a burden of production, not one of persuasion." *Id.*

The government may prove predisposition to commit a crime beyond a reasonable doubt, as required to rebut a defense of entrapment, by demonstrating (1) an existing course of

similar criminal conduct; (2) the defendant's already formed design to commit the crime or similar crimes; or (3) his willingness to do so, as evinced by ready complaisance. *United States v. Cromitie*, 727 F.3d 194, 205 (2d Cir. 2013) (citation omitted). "Predisposition … focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Id.* at 204 (citation and internal quotation marks omitted). There is no entrapment when a defendant is "ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also United States v. Mayo*, 705 F.2d 62, 69 (2d Cir. 1983) (holding government established predisposition beyond a reasonable doubt because of defendant's "ready and unhesitating response to [the informant's] inducement" and his "unhesitating willingness to commit the crimes for which he was convicted"). "The degree of pressure exerted, and the type, are matters that bear mainly on the element of predisposition." *Cabrera*, 13 F.4th at 146 (citation omitted).

    III.    <u>The Court Should Preclude Evidence or Argument Regarding Entrapment</u>

Inducement happens when the government "initiates the crime." *See Cabrera*, 13 F.4th at 146. Here, the defendants cannot show "credible evidence of inducement by a government agent" to shift the burden to the government to prove predisposition. *See Flores*, 945 F.3d at 717. The defendants have not proffered any communications or other evidence in which CHS-1 or CHS-2 initiated the crime—conspiring and attempting to give money to ISIS—nor could they. Facilitator-1 confirmed that he had known At Taqi for two years, *i.e.*, more than a year *before* At Taqi began communicating with CHS-1, and that At Taqi had regularly given Facilitator-1 money. And At Taqi confirmed to CHS-1 that he had previously sent money to a "brother" from "Dawlah," or ISIS, and provided CHS-1 with Facilitator-1's contact information. As such, CHS-1 began communicating with At Taqi *after* At Taqi had already donated money to ISIS. Financial records of defendant At Taqi's Bitcoin wallet further establish that he gave to Facilitator-1 *before* communicating with CHS-1. Likewise, defendant Hashimi contributed money to ISIS separate and apart from any communications with CHS-2.

Given that the defendants cannot make a production of "some evidence" of government inducement, the Court should preclude the defendants from arguing that they were entrapped, including any argument that they were induced. Testimony or argument about inducement or entrapment would be prejudicial to the government because it suggests that the government acted inappropriately. *See* Fed. R. Evid. 403. At the same time, testimony about entrapment is not relevant because there is no showing of inducement; thus, entrapment is not relevant to a factual dispute to be determined by the jury. *See* Fed. R. Evid. 401, 402.

5

Finally, the Court should permit the government to redact the following messages, including the defendant's own statements, regarding whether Carpenter was entrapped from the government's Group Chat-1:

>Group Member 3: Do you think Brother Abu Hamza could get away if his lawyer plays the entrapment card?
>
>Group Member 5: Entrapment Card?
>
>Hashimi: No
>Every single American operation is an entrapment case
>Only in Canada they can't entrap.

Ex. A at 1. As the *Carpenter* jury verdict reflects, Carpenter was not entrapped and permitting evidence or argument otherwise risks prejudicing the government. These communications are not needed for completeness under Federal Rule of Evidence 106, because the communications about the Facilitator-1 PayPal and Bitcoin wallet occurred approximately 24 hours later and are about a completely different topic. *See* Ex. A. In addition, the Court should preclude defense counsel from cross-examining CHS-2 about what entrapment means or implying that there was anything improper about undercover law enforcement agents speaking with either Carpenter or the defendants in the instant matter. Such testimony would be prejudicial and not relevant to a factual determination the jury needs to make. *See* Fed. R. Evid. 401, 403.

IV. The Court Should Preclude Arguments Regarding Susceptibility to ISIS Propaganda

In advance of trial in this case, defendant At Taqi requested that the prospective jurors be asked the following questions:

1. Are you familiar with or have watched any propaganda or other media created by ISIS or any other groups including the Department of Justice and the White House related to foreign terrorist organizations?
2. Has anyone ever had any experience with propaganda or disinformation?
3. Does anyone believe that propaganda only affects certain kinds of people?

At the pretrial conference related to jury selection, at At Taqi's requests, and over the government's objection, Judge Merkl agreed to ask prospective jurors, "Do you have any strong beliefs about propaganda's effect on people that would impact your ability to be fair and impartial in this case, including, for example, whether members of certain groups are especially vulnerable to the influence of propaganda?" In response to the government's objection, At Taqi's counsel suggested

that the question was necessary to determine whether jurors believe members of certain groups—such as those of a young age—are especially vulnerable to propaganda.

It appears from At Taqi's requested questions and comments at the jury selection conference, that At Taqi intends to argue that he was particularly vulnerable to ISIS propaganda because of his age. Such arguments and evidence should be precluded because they are irrelevant, risk confusing the jury, and would invite jury nullification. *See* Fed. R. Evid. 401, 402, 403.

As an initial matter, susceptibility to ISIS propaganda is not a defense to the charged crime. The issues for the jury to decide in this case include whether the defendants conspired or attempted to provide material support to ISIS and whether they conspired to launder money. Evidence regarding particular vulnerability to ISIS propaganda due to one's age is not relevant to the defendant's criminal conduct. Certainly, evidence that the defendant had on his devices and consumed ISIS media and violent images of beheadings and other murders, is relevant to his knowledge that ISIS is a terrorist organization, which is an element of the charged crimes. But argument that he was vulnerable to ISIS propaganda because of his age does not bear on his criminal intent. Instead, such arguments would simply invite jury nullification and risk confusing the jury. *See United States v. Rivera*, No. 13-cr-149, 2015 U.S. Dist. LEXIS 49430, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (district court may consider "the risk of jury nullification" in determining admissibility of evidence under Federal Rule of Evidence 403) (citing *United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011)).

The Court should therefore preclude any evidence or argument that the defendant was victimized by ISIS propaganda or that he was part of a vulnerable group under Rules 402 and 403.

V.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court preclude the defendants from making an argument or eliciting testimony that they were induced or entrapped, or that the defendants were particularly susceptible or vulnerable to ISIS propaganda.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:      /s/
Nina C. Gupta
Gilbert M. Rein
Ellen H. Sise
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (ENV) (by ECF)
      Counsel of record (by ECF and email)